UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ESTATE OF MELBA V. HAIGHT, )
deceased, BARBARA A. HAIGHT, as )
personal representative and individually, )
KATHLEEN S. HAIGHT, individually and )
DEBRA R. HAIGHT, individually, )
  )
   Plaintiffs )
  ]
    v. )    CASE NO. 3:03-CV-885 RM
  )
KENNETH B. ROBERTSON, M.D., et al., )
  )
   Defendants )

<u>OPINION AND ORDER</u>

On December 5, 2003, the plaintiffs filed a complaint for medical malpractice against the named defendants, jointly and severally, requesting both money damages and equitable relief. This matter is now before the court on three motions for summary judgment by Dr. Robertson and the Memorial defendants, the Trinity defendants, and Dr. Steven Susler and Valley Emergency Physicians. The Memorial and Trinity defendants moved to strike the affidavit of plaintiffs' counsel Sean Drew submitted in opposition to the Memorial defendants' summary judgment motion. The Memorial defendants and Dr. Susler, along with Valley Emergency Physicians, also moved to strike the declaration of Dr. Wachtel submitted by the plaintiffs in response to the court's March 12, 2008 order. For the reasons that follow, the court grants all of the defendants' summary judgment motions and the motions to strike both Mr. Drew's and Dr. Wachtell's affidavits.

I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are viewed in the light most favorable to the representatives of Melba Haight, the nonmoving party. On December 2, 2001, Melba Haight developed a urinary tract infection and began using the antibiotic Levaquin, as prescribed by her physician, Dr. Kenneth Robertson. A few days later, on December 6, Ms. Haight reported to Dr. Robertson that she wasn't responding well to the medication and had a decreased appetite and increased heart rate. Ms. Haight also requested the results from her preliminary urine culture. Dr. Robertson received a facsimile from the medical lab the next day, which indicated the presence of a staph infection and reflected that Ms. Haight was "Levofloxacin blood resistant and urine resistant." According to the plaintiffs, Dr. Robertson told Ms. Haight to continue taking antibiotics despite being informed that her condition was deteriorating.

During the late evening hours on December 8, Ms. Haight's family summoned emergency aid from Southwestern Medical Ambulance Service, who transported Ms. Haight to the St. Joseph Regional Medical Center and provided oxygen to aid her breathing. Upon Ms. Haight's arrival at the emergency department, the plaintiffs claim that Nurse Judith Sulok removed her oxygen flow mask for about 19 minutes, resulting in a decrease in oxygenation level. The plaintiffs further claim that although Nurse Sulok and the attending physician, Dr. Steven Susler, knew Ms. Haight was in acute respiratory failure, was subject to a urinary tract staph infection, and was unresponsive to her prescribed antibiotics, the St. Joseph Regional Medical Center failed to properly provide

medical screening and stabilizing treatments.

As a result of Ms. Haight's worsening condition, Dr. Robertson ordered her to be admitted to the St. Joseph Regional Medical Center's Progressive Cardiac Unit on December 9, and thereafter, Dr. Matthew Koscielski transferred her to the Intensive Care Unit. Ms. Haight remained a patient in the Intensive Care Unit until her death on December 30. During her stay, Ms. Haight interacted with a number of medical professionals who are named as defendants in this case.

After Ms. Haight's death, the representatives of her estate filed suit against Dr. Robertson, the Memorial defendants, the Trinity defendants, Dr. Susler, and Valley Emergency Physicians. The plaintiffs allege a violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA") against the Trinity defendants as well as various claims of medical malpractice against all of the defendants in their care and treatment of Ms. Haight. The court stayed this matter pending the parties' submission of evidence to a medical review panel pursuant to the Indiana Medical Malpractice Act. On October 23, 2006, each of the three medical review panel members issued an opinion that the evidence submitted did not support the conclusion that the defendants failed to meet the appropriate standard of care as charged in the complaint and that the conduct complained of against all defendants was not a factor of the resultant damages.

On April 6, 2007, Dr. Robertson and the Memorial defendants filed their summary judgment motion. The Trinity defendants filed their motion for summary judgment on May 11, and Steven Susler, M.D. and Valley Emergency Physicians followed with a similar motion on May 14. The plaintiffs responded to the April 6

motion only, asking that it be denied, or in the alternative, continued pursuant to Federal Rule of Civil Procedure 56(f) to allow the plaintiffs to obtain an affidavit from their retained expert, Dr. Andrew Wacthel. Thereafter, plaintiffs' counsel, Sean Drew, submitted his affidavit in opposition to the April 6 motion, stating that he anticipated Dr. Wacthel to render an expert opinion in this case. Both the Memorial and Trinity defendants moved to strike Mr. Drew's affidavit as deficient pursuant to Rule 56(e).

Plaintiffs moved for an extension of time to respond to the May 11 motion for summary judgment, but that motion was denied without prejudice to re-file in compliance with the Local Rules. Since then, the plaintiffs have not sought another extension of time or respond to the outstanding motions to strike. As a result of this inaction, the court informed the parties of its intent to rule and afforded both parties the opportunity to file further information concerning the status of the case. The plaintiffs responded a statement noting that the complaint alleged facts relating to numerous other violations of state and federal law and attached the affidavit of Dr. Wachtel's affidavit. The Memorial defendants and Dr. Susler along with Valley Emergency Physicians moved to strike Dr. Wachtel's affidavit as untimely under Local Rule 56.1(a).

## II. DISCUSSION

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986); Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004).

### A) EMTALA Claim

The plaintiffs allege in Count I of the complaint that the Trinity defendants failed to provide Ms. Haight with appropriate emergency medical treatment as required by EMTALA. 42 U.S.C. § 1395dd. Under EMTALA, providers of emergency medical care are subject to two primary obligations, commonly referred to as the screening requirement and the stabilization requirement. Harry v. Merchant, 291 F.3d 767, 770 (11th Cir. 2002). The screening requirement obligates hospital emergency rooms to provide an appropriate medical screening to determine

whether the individual has an emergency medical condition. 42 U.S.C. § 1395dd(a). If an emergency medical condition is determined to exist, the hospital must provide any necessary stabilizing treatment before transferring the individual. Id § 1395dd(b).

Although EMTALA is silent as to when an emergency medical provider's obligations end, several circuits have concluded persuasively that EMTALA is inapplicable to individuals admitted for inpatient care. See Bryant v. Adventist Health Sys./West, 289 F.3d 1162, 1167 (9th Cir. 2002) ("We hold that EMTALA's stabilization requirement ends when an individual is admitted for inpatient care."); Bryan v. Rectors and Visitors of the Univ. of Virginia, 95 F.3d 349, 352 (4th Cir. 1996) ("It seems manifest to us that the stabilization requirement was intended to regulate the hospital's care of the patient only in the immediate aftermath of the act of admitting her for emergency treatment and while it considered whether it would undertake longer-term full treatment or instead transfer the patient to a hospital that could and would undertake that treatment."); but see Lopez-Soto v. Hawayek, 175 F.3d 170, 175 (1st Cir. 1999) (finding that while the screening requirement applies to individuals who seek assistance at an emergency room, the stabilization requirement obligates hospitals to stabilize individuals whenever emergency conditions are detected); Thornton v. SW Detroit Hosp., 895 F.2d 1131, 1135 (6th Cir. 1990) (noting in dicta that EMTALA's stabilization requirement may apply to emergency conditions that arise after an individual is admitted for inpatient care). Likewise, the Department of Health and Human Services issued regulations interpreting EMTALA which provide that when the hospital has

screened the individual and then admitted her in good faith to stabilize her condition, "the hospital has satisfied its special responsibilities . . . with respect to that individual." 42 C.F.R. § 489.24(d)(2)(i) (2007). Congress enacted EMTALA in an effort to prevent patient dumping, not to create a federal malpractice statute. *See* Bryant v. Adventist Health Sys./West, 289 F.3d at1168-1169 (9th Cir. 2002) ("If EMTALA liability extended to impatient care, EMTALA would be convert[ed] . . . into a federal malpractice statute, something it was never intended to be.") (citations omitted). As such, state medical malpractice law provides the proper recourse for allegations regarding inadequate medical care received once a patient is admitted to the hospital. *See* Mazurkiewicz v. Doylestown Hosp., 305 F. Supp. 2d 437, 443 (E.D. Pa. 2004) (holding that admission for inpatient care is a defense to EMTALA liability so long as it is not a subterfuge for patient dumping).

In their complaint, the plaintiffs admit that Nurse Sulok and Dr. Susler performed a screening exam and determined that Ms. Haight's condition was an emergency medical condition. After this exam, Ms. Haight was admitted to the St. Joseph Regional Medical Center's Progressive Cardiac Unit as an inpatient. The Trinity defendants contend that because Ms. Haight was admitted to the hospital to stabilize her condition, they fulfilled all of their EMTALA obligations. In addition to their claims regarding the hospital's stabilizing treatments, the plaintiffs also claim that the Trinity defendants are subject to liability because Ms. Haight's initial screening exam was differential as to other patients with the same presenting symptoms.

Even if the plaintiffs' claims are construed as limited to the screening which

occurred before Ms. Haight was admitted to the hospital, the plaintiffs must show that the hospital provided Ms. Haight with only a cursory screening or treated her disparately. Hoffman v. Tonnemacher, 425 F. Supp. 2d 1120, 1131 (E.D. Cal. 2006) ("To recover for disparate treatment, the plaintiff must proffer evidence 'sufficient to support a finding that she received materially different screening than provided to others in her condition. It is not enough to proffer expert testimony as to what treatment should have been provided to a patient in the plaintiff's position.'"). In particular, "a hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints." Magruder v. Jasper County Hosp., 243 F. Supp. 2d 886, 891 (N.D. Ind. 2003).

The plaintiffs haven't met their burden of coming forward with evidence sufficient to allow a finding that the hospital failed to provide Ms. Haight with an appropriate medical screening. Even if Ms. Haight's treating physicians failed to appreciate the extent of her illness, "[a] mere faulty or negligent screening is not a violation of EMTALA." Id at 1135; Curry v. Advocate Bethany Hosp., 204 Fed. Appx. 553, 556 (7th Cir. 2006) ("That the treatment provided was ineffective – that it may even have involved a misdiagnosis or malpractice – does not violate EMTALA so long as she was stabilized. EMTALA is not a federal malpractice statute."). Upon her arrival at the emergency room, Ms. Haight experienced difficulty breathing, her treating physicians screened her, and she was admitted

to the hospital for further care. The plaintiffs' criticisms of these procedures do not demonstrate a screening so cursory that it wasn't reasonably calculated to detect the existence of emergency conditions that may have been afflicting Ms. Haight. *See* <u>Bryant v. Adventist Health Sys./West</u>, 289 F.3d at 1165-1166. Moreover, the plaintiffs presented no evidence that the hospital treated Ms. Haight differently from other patients with similar symptoms or that the hospital violated its established screening procedures. Therefore, the court grants summary judgment on the plaintiffs' EMTALA claim.

### (B) Medical Malpractice Claims

In Counts II, III, IV, V, and VI of the complaint, the plaintiffs allege that the defendants breached the applicable standard of care in providing medical services to Ms. Haight, and make various other claims which amount to allegations of medical malpractice.[1] To establish a prima facie case sufficient to survive summary judgment in a medical malpractice action, the plaintiff must show that (1) a duty was owed to the plaintiff by the medical provider; (2) the medical provider breached this duty by permitting its conduct to fall below the set standard of care; and (3) the plaintiff suffered a compensable injury proximately

---

[1] In their response to the court's March 12, 2008 order, the plaintiffs suggest that Count V alleges facts relating to violations of state and federal law not subject to the defendants' motions for summary judgment, including; failure to produce medical records, assault and battery, fraud and misrepresentation, and discrimination against federally protected rights. These claims are essentially restatements of the plaintiffs' malpractice allegations and were all reviewed by the medical review panel. Further, the plaintiffs don't specify which of these claims are alleged against which defendants nor do they specify the state or federal law at issue. As such, the court considers all of the allegations in Count V subject to summary judgment.

caused by the medical provider's breach of duty. <u>Perez v. Bakel</u>, 862 N.E.2d 289, 293 (Ind. Ct. App. 2007); <u>Watson v. Med. Emergency Servs., Corp.</u>, 532 N.E.2d 1191, 1193 (Ind. Ct. App. 1989).

The medical provider's duty to conform to the standard of care requires it "to possess and exercise that degree of skill and care ordinarily possessed and exercised by a reasonably careful, skillful and prudent practitioner in the same class to which he belongs treating such maladies under the same or similar circumstances." <u>Mills v. Berrios</u>, 851 N.E.2d 1066, 1070 (Ind. Ct. App. 2006) (*citing* <u>McIntosh v. Cummins</u>, 759 N.E.2d 1180, 1184 (Ind. Ct. App. 2001)). Conduct that falls below this standard establishes a breach of the medical provider's duty. <u>Mills v. Berrios</u>, 851 N.E.2d at 1070.

When the medical review panel opines that the plaintiff has failed to make a prima facie case, the plaintiff must come forward with expert testimony regarding the existence and scope of the standard of care, breach of that standard, and whether particular acts or omissions measure up to the standard. *See* <u>Brown v. Banta</u>, 682 N.E.2d 582, 584 (Ind. Ct. App. 1997); <u>Bassett v. Glock</u>, 368 N.E.2d 18, 22-23 (Ind. Ct. App. 1977) (holding that the appropriate standard of care may not be resolved without resort to expert testimony). Summary judgment is appropriate when the plaintiff provides no countervailing expert opinion in response to a unanimous medical review panel opinion. *See* <u>Shoup v. Mladick</u>, 537 N.E.2d 552, 553 (Ind. Ct. App. 1989). When submitting an opposing affidavit to establish an issue of fact on the standard of care issue, the plaintiff's expert must demonstrate familiarity with the standard of care, set out the standard of

care, and state that the treatment in question falls below that standard. Hoskins v. Sharp, 629 N.E.2d 1271, 1278 (Ind. Ct. App. 1994). Expert testimony also is necessary to establish what a reasonably prudent physician would or would not have done in treating the plaintiff. Perry v. Driehorst, 808 N.E.2d 765, 768 (Ind. Ct. App. 2004).

It is undisputed that the defendants owed a duty to Ms. Haight. The parties conflict as to whether the defendants breached that duty and proximately caused Ms. Haight's damages. In each of their three summary judgment motions, the defendants argue that they are entitled to judgment as a matter of law because the plaintiffs haven't presented expert testimony as to the requisite standard of care, whether the defendants' conduct fell below that standard, and whether that conduct caused Ms. Haight's resultant damages. The medical review panel that reviewed the plaintiffs' complaint concluded that the evidence didn't establish that the defendants failed to meet the appropriate standard of care or that the conduct complained of was a factor of Ms. Haight's resultant damages. Instead of providing an admissible expert opinion in response to these findings, plaintiffs' counsel, Sean Drew, submitted his own affidavit, claiming that he had retained Dr. Andrew Wachtel to render an expert opinion in the future. The Memorial and Trinity defendants moved to strike Mr. Drew's affidavit as hearsay.

The plaintiffs later filed Dr. Wachtel's affidavit in response to the court's March 12, 2008 order affording the parties an opportunity to file further information concerning the status of the case, and the Memorial defendants and Dr. Susler along with Valley Emergency Physicians moved to strike Dr. Wachtel's

affidavit as untimely. Neither of the affidavits is admissible in opposition to the defendants' motions for summary judgment, so the plaintiffs haven't provided evidence sufficient to create a genuine issue of material fact for trial. *See* Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005) ("Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.") (*quoting* Schacht v. Wisc. Dept. of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

### *(i) Mr. Drew's Affidavit*

The Memorial and Trinity defendants argue that Mr. Drew's affidavit is deficient under Federal Rule of Civil Procedure 56(e) for several reasons. First, although the plaintiffs may rely on supporting and opposing affidavits, these affidavits "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). In paragraph 5 of his affidavit, Mr. Drew states that he personally spoke with Dr. Wachtel and gathered information regarding his anticipated medical opinion. These out-of-court statements are offered for the truth of the matter asserted and are thus inadmissible hearsay. *See* FED R. EVID. 801(c); *see also* Richardson v. Rush Presbyterian St. Luke's Med. Ctr., 63 Fed. Appx. 886, 890 (7th Cir. 2003) (holding that a summary judgment affidavit containing inadmissible hearsay that was not based upon the affiant's personal knowledge couldn't be used to defeat a motion

for summary judgment). Because none of these statements qualify for any of the hearsay exceptions, they would be inadmissible at trial and cannot be relied upon in opposition to summary judgment. *See* FED. R. EVID. 802; FED. R. CIV. P. 56(e).

The Memorial and Trinity defendants also argue that Mr. Drew's statements should be stricken because he is essentially attempting to serve as his own expert witness. The defendants point to <u>Toam v. Verizon</u>, in which the plaintiff attempted to rely on his own assertions regarding medical issues central to his claims. 2007 WL 570495 at *10-11 (N.D. Ind. Feb. 20, 2007). In that case, the court noted that Toam had no specialized medical training and, as a result, his statements were inadmissible medical opinion pursuant to Federal Rule of Evidence 701. <u>Id.</u> Similarly, Mr. Drew has no medical expertise and his hearsay statements regarding Dr. Wachtell's anticipated findings are inadmissible and can't be relied upon in opposition to summary judgment. The court grants the Memorial and Trinity defendants' motions to strike Mr. Drew's affidavit.

*(ii) Dr. Wachtel's Affidavit*

The plaintiffs also submit the affidavit of their retained expert, Dr. Wachtell, in support of their malpractice claims. Dr. Wachtell's affidavit states that he is a licensed and board certified medical doctor and that he reviewed the records as contained in all of the submissions in this case. Dr. Wachtell opines that the defendants breached the requisite standard of care by failing to provide adequate nutritional support to Ms. Haight and that this "lack of nutrition contributed to the other processes occurring during [Ms. Haight's] admission to St. Joe Medical Center," ultimately leading to her death.

Both the Memorial defendants and Dr. Susler along with Valley Emergency Physicians moved to strike Dr. Wachtell's affidavit as untimely. Under Local Rule 56.1(a), any party opposing a motion for summary judgment shall serve and file any affidavits or other documentary material controverting the movant's position within 30 days from the date such motion is served upon it. L.R. 56.1(a). The Memorial defendants filed their motion for summary judgment on April 6, 2007, and Dr. Susler and Valley Emergency Physicians followed on May 14. The sole response filed by the plaintiffs addressed the Memorial defendants' motion and included Mr. Drew's affidavit without supporting documentation. Only after the court informed the parties of its intent to rule did the plaintiffs file Dr. Wachtell's affidavit on March 20, 2008, more than nine months after filing their brief in opposition to the Memorial defendants' motion for summary judgment. In addition, they did so without seeking leave or designating the motions to which the affidavit responds. As such, the court strikes Dr. Wachtell's affidavit as untimely.

Even if Dr. Wachtell's affidavit were timely, it is insufficient to create a genuine issue of fact as to whether a breach of the duty of care occurred. *See* Malooley v. McIntyre, 597 N.E.2d 314, 317 (Ind. Ct. App. 1992) (holding that plaintiffs aren't under an obligation "to present evidence sufficient to prevail upon its claims in the context of a full-blown trial," but they are "obliged to establish a sufficient basis upon which the court might find the existence of a genuine triable issue . . . ."). Dr. Wachtell's general and conclusory statements don't outline the applicable standard of care, or the degree of skill and care ordinarily possessed

and exercised by a reasonably skillful and careful practitioner under similar circumstances, nor do they explain what a reasonably prudent medical provider would have done differently. *See* Lusk v. Swanson, 753 N.E.2d 748, 753-754 (Ind. Ct. App. 2001) (finding that the plaintiff's expert witness's affidavit was insufficient to create a genuine issue of material fact to overcome the defendant's motion for summary judgment because the expert didn't demonstrate his familiarity with the requisite standard of care). Dr. Wachtell doesn't specify which defendants breached the standard of care or when the medical care was allegedly inadequate, making it impossible for the individual defendants to respond to the plaintiffs' allegations.

Moreover, Dr. Wachtell's affidavit doesn't address the bulk of the allegations contained in the complaint, namely: Count II regarding Dr. Robertson's provision of primary care; Count III regarding Dr. Susler, Valley Emergency Physicians, and the Trinity defendants' provision of emergency medical care; Counts IV and V regarding Ms. Haight's inpatient treatment; and Count V regarding failure to release medical records, assault and battery, fraud and misrepresentation, and discrimination. The plaintiffs may have been able to mount a stronger argument for liability, but it's not the court's job to figure out what that argument would have been. *See* Fagocki v. Algonguin/Lake-in-the-Hills Fire Protection Dist., 496 F.3d 623, (7th Cir. 2007) (holding that it is not proper for a court "to quarry the record for good factual arguments which a party failed to make and to which, therefore, his opponent had no occasion to respond. 'It is the parties' duty to package, present, and support their arguments.'") (*quoting* Roger Whitmore's

<u>Automotive Servs., Inc. v. Lake County</u>, 424 F.3d 659, 664 n.2 (7th Cir. 2005)).

The plaintiffs have provided no admissible evidence in opposition to the defendants' motions for summary judgment or shown good cause under Federal Rule of Civil Procedure 56(f) for their failure to submit an adequate expert opinion. Accordingly, the plaintiffs haven't made a showing sufficient to establish the existence of an essential element of their medical malpractice claim, and the defendants are entitled to summary judgment. *See* <u>Uhrick v. United States</u>, 2006 WL 2623285 at *6 (N.D. Ind. Sep. 12, 2006) (granting summary judgment for the defendant where the plaintiff's medical expert's affidavit was silent regarding the applicable standard of care).

III. CONCLUSION

For the foregoing reasons, the court rules on the defendants' motions as follows:

(a) each of the defendants' motions for summary judgment [Doc. Nos. 83, 88, and 90 ]are GRANTED;

(b) the Memorial and Trinity defendants' motions to strike the affidavit of Sean Drew [Doc. Nos. 98 and 99] are GRANTED; and

(c) the Memorial defendants' and Dr. Susler and Valley Emergency Phyisicians' motions to strike the affidavit of Dr. Wachtell [Doc. Nos. 106 and 107] are GRANTED.

SO ORDERED.

ENTERED: March 31, 2008

_____/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court